## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

KRISTA PURVIS,

                         Plaintiff,

      v.

LACKAWANNA COUNTY,
                Defendant.

CIVIL ACTION NO. 3:22-CV-01907

(MEHALCHICK, J.)

## MEMORANDUM

Plaintiff Krista Purvis ("Purvis") initiated this action by filing a complaint on December 1, 2022. (Doc. 1). On June 29, 2023, Purvis filed the operative amended complaint against Defendant Lackawanna County ("Lackawanna County"). (Doc. 27). Before the Court is a motion for summary judgment filed by Lackawanna County. (Doc. 38). For the reasons provided herein, Lackawanna County's motion will be **GRANTED in part** and **DENIED in part**. (Doc. 38).

## I. BACKGROUND AND PROCEDURAL HISTORY

The following background is taken from the parties' statements of material facts and responses thereto.[1] (Doc. 39; Doc. 43-1). Lackawanna County has employed Purvis since

---

[1] Pursuant to Local Rule 56.1, the Court accepts as true all undisputed material facts supported by the record. Where the record evinces a disputed fact, the Court will take notice. The facts have been taken in the light most favorable to the non-moving party with respect to the motion. The Court notes that Purvis filed both a response to Lackawanna County's statement of facts and a counter statement of facts. (Doc. 43-1; Doc. 43-2). Lackawanna County argues that a separate counter statement of facts is not explicitly authorized by Local Rule 56.1 but does not request the Court strike or not consider Purvis's counter statement of fact. (Doc. 44, at 1-2). While courts in this district have recognized that a separate counter statement of facts is not explicitly authorized by Local Rule 56.1, courts have found that such

2017 when Purvis began working for the Lackawanna County Public Defender's Office. (Doc. 39, ¶¶ 2-3; Doc. 43-1, ¶¶ 2-3). While at the Public Defender's Office, Purvis met Debi Domenick ("Domenick"). (Doc. 39, ¶ 7; Doc. 43-1, ¶ 7). The two became friends and Domenick served as a reference for Purvis when she applied to work at the Lackawanna County Prison. (Doc. 39, ¶¶ 7-11; Doc. 43-1, ¶¶ 7-11). On or about February 5, 2020, Lackawanna County hired Purvis to work as a lieutenant at the Lackawanna County Prison. (Doc. 39, ¶ 1; Doc. 43-1, ¶ 1). Domenick served as Lackawanna County Commissioner at the time Purvis worked at the prison. (Doc. 39, ¶¶ 7-11; Doc. 43-1, ¶¶ 7-11). On June 15, 2020, Purvis became Acting Captain of Treatment at the prison. (Doc. 39, ¶ 12; Doc. 43-1, ¶ 12). On August 8, 2020, Purvis became Deputy Warden of Treatment at the prison. (Doc. 39, ¶ 13; Doc. 43-1, ¶ 13).

Purvis, a woman in a same-sex marriage, asserts that throughout her tenure at the prison, Lackawanna County Prison Warden Timothy Betti ("Warden Betti"), Former County Deputy Director and Lackawanna County Human Resources Director Justin MacGregor ("MacGregor"), along with other male officials at the prison, regularly subjected Purvis to highly offensive, sexist, homophobic, and sexual comments. (Doc. 43-1, ¶¶ 14-15, 20). Lackawanna County denies that Purvis was regularly subjected to such comments and asserts that Purvis was subjected to offensive comments eleven times. (Doc. 39, ¶¶ 14-15).

The parties agree that in early December 2021, Warden Betti and other prison officials investigated Purvis regarding a relationship she allegedly had with Theresa Hernandez

---

a filing is part of the record and "the court must utilize the document as a conduit to both access and navigate the record evidence upon which [a non-moving party] relies." *Barber v. Subway*, 131 F. Supp. 3d 321, 322 (M.D. Pa. 2015); see also *Konsavage v. Mondelez Glob. LLC*, No. 3:15-CV-1155, 2017 WL 468228, at *1 (M.D. Pa. Feb. 3, 2017).

("Hernandez"), a supervisory employee at Wellpath, the Prison's medical provider. (Doc. 39, ¶¶ 28-40; Doc. 43-1, ¶¶ 28-40). According to Lackawanna County, Warden Betti and other officials investigated Purvis based on serious allegations that Purvis had an improper relationship with Hernandez. (Doc. 39, ¶¶ 28-38). Lackawanna County asserts that the investigators ultimately concluded that there was not enough independent evidence for prison officials to discipline Purvis and prison officials did not change the terms of Purvis's employment. (Doc. 39, ¶¶ 38-40) According to Purvis, Warden Betti and Colleen Orzel, the Deputy Warden of Operations, instigated the investigation "simply because of [Purvis's] sexuality" and the accusations were based on rumors and fabrications. (Doc. 43-1, ¶¶ 28-40).

On February 15, 2022, Purvis retained Attorney Derrek W. Cummings ("Cummings"), who sent a letter to Lackawanna County officials accusing prison officials of discriminating against Purvis on the basis of her gender and sexual orientation. (Doc. 38-15; Doc. 39, ¶ 41; Doc. 38-15; Doc. 43-1, ¶ 41). The letter states that prison officials subjected Purvis to hostile treatment due to her gender and sexual orientation throughout her tenure at the prison and asserts that prison officials further discriminated against Purvis by falsely accusing her of having an affair with Hernandez, female co-worker. (Doc. 38-15). Lackawanna County asserts that this letter was the first time Purvis made a formal report accusing anyone at the prison of discrimination. (Doc. 39, ¶¶ 17-19). According to Lackawanna County, Purvis had only once emailed MacGregor regarding inappropriate comments, and complained about certain comments to Domenick as a friend rather than a Lackawanna County official. (Doc. 39, ¶¶ 20-22). Purvis counters that she repeatedly complained to Domenick, the Lackawanna County Commissioner, about being discriminated against on the basis of her gender and sexual orientation. (Doc. 43-1, ¶ 19). Purvis further asserts that she complained to MacGregor

3

and to Lackawanna County Labor Counsel Matthew Carmody ("Carmody") that she felt she was being targeted by Warden Betti based on her gender and sexual orientation in January 2022, prior to her retaining counsel. (Doc. 43-1, ¶¶ 19-20).

The parties agree that on March 7, 2022, Warden Betti interviewed Purvis regarding an incident wherein it was alleged that Odaliz Wong the spouse of inmate Steven Wong ("Inmate Wong"), mailed Purvis a package containing contraband. (Doc. 39, ¶¶ 42-54; Doc. 43-1, ¶¶ 42-54). The parties dispute whether Purvis acted appropriately in connection with this package and whether this package contained contraband. (Doc. 39, ¶¶ 42-54; Doc. 43-1, ¶¶ 42-54). According to Lackawanna County, on March 2, 2022, the prison received a package from Odaliz Wong addressed to Purvis containing contraband Odaliz Wong wanted Purvis to deliver to Inmate Wong. (Doc. 39, ¶ 42). Lackawanna County asserts that prison officials receiving contraband and delivering it to an inmate is a serious violation of prison policies, and Warden Betti interviewed Pervis regarding the package. (Doc. 39, ¶¶ 43-44). Lackawanna County claims that Purvis refused to cooperate with the interview, was insubordinate, and contradicted herself. (Doc. 39, ¶¶ 45-46).

Purvis counters that the prison received a package containing a crucifix chain and a wedding ring, neither of which are contraband under prison policy. (Doc. 43-1, ¶ 42). According to Purvis, it is neither uncommon nor against prison policy for inmates to have family members or friends send items directly to prison officials with or without the official's consent, especially when those items are not contraband. (Doc. 43-1, ¶ 43). Purvis claims that this incident would not have "raised a single eyebrow" had the incident not involved Purvis, who had recently accused Warden Betti and others of discrimination. (Doc. 43-1, ¶ 43). Purvis denies being insubordinate or dishonest and asserts that when she was interviewed, she

4

expressed hesitance to answer questions without her lawyer present due to her belief that the interview was an act of retaliation. (Doc. 43-1, ¶ 45).

On March 7, 2022, the Lackawanna County determined that Purvis should be suspended pending a due process hearing, but on that same day, Purvis requested Family and Medical Leave Act ("FMLA") leave, which Lackawanna County promptly granted rather than suspending Purvis. (Doc. 39, ¶¶ 48-49; Doc. 43-1, ¶¶ 48-49). Purvis's FMLA leave ended on May 5, 2022, and Purvis was placed on paid administrative suspension pending a due process hearing. (Doc. 39, ¶ 50; Doc. 43-1, ¶ 50). On June 14, 2022, a three-member panel including Warden Betti, Carmody, and Human Resources Compliance Officer Ted Praschak, held a due process hearing, and the panel recommended that Purvis be terminated. (Doc. 39, ¶¶ 51-52; Doc. 43-1, ¶¶ 51-52). On June 15, 2022, the Lackawanna County Prison Board approved Purvis's termination and Lackawanna County terminated Purvis. (Doc. 39, ¶¶ 52-54; Doc. 43-1, ¶¶ 52-54).

Purvis filed the operative amended complaint on June 29, 2023, alleging three counts under state and federal law. (Doc. 27). Count I alleges Lackawanna County violated Title VII of the Civil Rights Act of 1964 ("Title VII") by retaliating against Purvis after she complained about discrimination on the basis of gender and sexual orientation. (Doc. 27, ¶¶ 44-46). Count II alleges that Lackawanna County violated Title VII by subjecting Purvis to a hostile work environment and terminating Purvis because of her gender and/or sexual orientation. (Doc. 27, ¶¶ 47-51). Count III alleges Lackawanna County violated the Pennsylvania Human Relations Act ("PHRA") by subjecting Purvis to a hostile work environment, retaliating against Purvis after she complained about discrimination on the basis of gender and sexual

orientation, and terminating Purvis because of her gender and/or sexual orientation. (Doc. 27, ¶¶ 52-58).

On November 4, 2024, Lackawanna County filed a motion for summary judgment along with corresponding exhibits, a statement of facts, and a brief in support. (Doc. 38; Doc. 39; Doc. 40). On December 5, 2024, Purvis filed a brief in opposition, a response to statement of facts, a counter statement of facts, and corresponding exhibits. (Doc. 43; Doc. 43-1; Doc. 43-2). On December 19, 2024, Lackawanna County filed a reply brief. (Doc. 44). On February 25, 2025, Purvis filed a motion for leave to file a *sur reply*. (Doc. 47). On April 1, 2025, the Court granted Purvis's motion for leave to file a *sur reply* brief and Purvis filed her *sur reply* brief that same day. (Doc. 51; Doc. 52). Accordingly, the motion for summary judgment is now ripe for disposition.

## II.    MOTION FOR SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material

facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." *See* M.D. Pa. L.R. 56.1.

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson, 477 U.S. at 249*.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories, or the like to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment

7

when uncorroborated and contradicted by other evidence of record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential) ("[U]nsupported deposition testimony, which is contradicted by the record, is insufficient to defeat summary judgment."); *Nat'l Labor Rel. Bd. v. FES*, 301 F.3d 83, 95 (3d Cir. 2002) ("[The plaintiff's] testimony. . . amounts to an unsupported, conclusory assertion, which we have held is inadequate to satisfy the movant's burden of proof on summary judgment").

### III.   DISCUSSION

Lackawanna County moves for summary judgment on four bases. First, Lackawanna County avers that the Court should grant summary judgment on Purvis's retaliation claims Purvis has failed to establish a *prima facie* case of retaliation. (Doc. 40, at 5). Lackawanna County next avers that the Court should grant summary judgment on Purvis's retaliation claims because Lackawanna County had a nondiscriminatory reason for terminating Purvis. (Doc. 40, at 5-8). Lackawanna County then posits that the Court should grant summary judgment on Purvis's discrimination and hostile work environment claims because Purvis has failed to present a *prima facie* case of a hostile work environment. (Doc. 40, at 8-14). Finally, Lackawanna County moves for summary judgment on Purvis's punitive damages claims because punitive damages are not available against a county in Title VII claims and are never available for PHRA claims. (Doc. 40, at 14-15).

The Court will begin its analysis with Purvis's retaliation claims. (Doc. 28, ¶¶ 44-46, 52-58). Retaliation claims are analyzed through the *McDonnell Douglas*[2] burden shifting standard under which Purvis must first establish a *prima facie* case of retaliation. *See Moore v. City of Philadelphia*, 461 F.3d 331, 340 (3d Cir. 2006), *as amended* (Sept. 13, 2006). For the reasons discussed *infra* Section III.A, there are genuine disputes of material fact which preclude summary judgment on Purvis's *prima facie* cases of retaliation and as such, the Court will continue its analysis under the *McDonnell Douglas* standard. *See Moore*, 461 F.3d at 342. The Court will analyze whether Lackawanna County has provided non-discriminatory reasons for terminating Purvis and whether Purvis has presented evidence from which a reasonable jury may infer that Lackawanna County's proposed reasons were pretextual. *See Moore*, 461 F.3d at 342. As discussed *infra* Section III.B, the Court finds Lackawanna County has presented nondiscriminatory reasons for terminating Purvis, but Purvis has presented evidence from which a reasonable jury may infer that those reasons were pretextual. Accordingly, the Court will **DENY** Lackawanna County's motion for summary judgment on Purvis's retaliation claims. (Doc. 38).

---

[2] This standard was first established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, in which the Court held that when analyzing discriminatory hiring claims, courts first must consider whether a plaintiff has established a *prima facie* case that an employer's decision not to hire them was discriminatory. 411 U.S. 792, 802 (1973), *holding modified by Hazen Paper Co. v. Biggins*, 507 U.S. 604, 113 S. Ct. 1701 (1993). The Court further found that once a plaintiff establishes a *prima facie* case, the burden shifts to the employer to propose a non-discriminatory reason for its decision not to hire the plaintiff. *McDonnell Douglas Corp.*, 411 U.S. at 802-03. The Court concluded that if the employer establishes a non-discriminatory reason for not hiring the plaintiff, the burden shifts back to the plaintiff to establish that the employer's proposed non-discriminatory reason is pretextual or "discriminatory in its application." *McDonnell Douglas Corp.*, 411 U.S. at 807.

The Court will then turn to Purvis's hostile work environment claims. (Doc. 27, ¶¶ 47-54). For the reasons discussed *infra* Section III.C, the Court finds that Purvis has presented a genuine dispute of material fact regarding whether she was subjected to a hostile work environment and the Court will **DENY** Lackawanna County's motion for summary judgment on Purvis's hostile work environment claims. (Doc. 38). Finally, the Court will **GRANT** Lackawanna County's motion for summary judgment on Purvis's punitive damages claims, as it is unopposed. (Doc. 38).

A. THERE ARE MATERIAL ISSUES OF FACT THAT PRECLUDE SUMMARY JUDGMENT ON PURVIS'S *PRIMA FACIE* CASE OF RETALIATION.

Counts I and III allege that Lackawanna County violated the Title VII and the PHRA by retaliating against Purvis for engaging in a protected activity. (Doc. 27, ¶¶ 86-112, 133-55). Lackawanna County contends that Purvis has failed to establish a *prima facie* case for retaliation because she cannot show a causal connection between her participation in a protected activity and her termination. (Doc. 40, at 3-8). Purvis avers that she has established a *prima facie* case of retaliation and there is a genuine dispute of material fact regarding causation. (Doc. 43, at 8-14).

Title VII states "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment. . . because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C.A. § 2000e-3. Similarly, the PHRA provides that it is unlawful for an employer to "discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or

assisted, in any manner, in any investigation, proceeding or hearing under this act." 43 Pa. Stat. Ann. § 955 (d).

These provisions prohibit an employer from retaliating against an employee for engaging in protected activity under the acts and courts analyze "retaliation claims arising under Title VII and the PHRA coextensively." *Steele v. Pelmor Lab'ys, Inc.*, 725 F. App'x 176, 178 (3d Cir. 2018). To survive a motion for summary judgment, a plaintiff must first establish a *prima facie* case of retaliation. *Moore*, 461 F.3d at 340. To establish a *prima facie* case, "a plaintiff must tender evidence that: '(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action.'" *Moore*, 461 F.3d at 340–41 (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)). This *prima facie* burden is not onerous. *See Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 259 (3d Cir. 2017); *see also Leese v. Dep't of Ins.*, No. 3:17-CV-00274, 2019 WL 3246746, at *6 (M.D. Pa. July 18, 2019). Once the plaintiff meets her initial burden to establish a *prima facie* case, courts apply the *McDonnell Douglas* burden-shifting standard where "'the burden shifts to the employer to advance a legitimate, non-retaliatory reason' for its conduct and, if it does so, 'the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.'" *Moore*, 461 F.3d at 342 (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997)).

Lackawanna County submits that Purvis has failed to present evidence showing a causal link between Purvis's termination and her engaging in protected activity. (Doc. 40, at 5). "Cases in which the required causal link has been at issue have often focused on the

temporal proximity between the employee's protected activity and the adverse employment action." *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997). However, temporal proximity is only one factor considered when assessing a causal link and "circumstantial evidence of a 'pattern of antagonism' following the protected conduct can also give rise to the inference. These are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference." *Kachmar*, 109 F.3d at 177. A plaintiff is not required to show that they would have suffered an adverse action but for their protected activity in the *prima facie* stage, but rather, only needs to needs to present evidence from which a reasonable jury may infer that their protected action was the likely reason for the adverse action. *See Carvalho-Grevious*, 851 F.3d at 262; *see also Leese*, 2019 WL 3246746, at *9.

Purvis has presented evidence which creates a genuine dispute of fact regarding causation. Both parties agree that on February 15, 2022, Purvis arranged for Cummings, her counsel, to send a letter stating that Purvis had been subjected to discrimination. (Doc. 39, ¶ 41; Doc. 43-1, ¶ 41; Doc. 43-4, at 497-499). Lackawanna County does not dispute that a reasonable jury may infer that this letter constituted a protected activity, but rather, avers that there is no evidence of a causal link between Purvis's protected activity and her termination. (Doc. 40, at 5; Doc. 44, at 3). Lackawanna County emphasizes that Purvis was not terminated until June 17, 2022, four months after Purvis's protected activity. (Doc. 40, at 5).

While Purvis was not terminated until June 2022, Purvis has presented evidence from which a reasonable jury may infer that there was a "pattern of antagonism" following Purvis's protected conduct, which creates a genuine dispute of fact regarding causation. *Kachmar*, 109 F.3d at 177. First, Purvis presents evidence that Cumming's letter was not Purvis's only

protected activity. Purvis presents a January 13, 2022, email from MacGregor to prison officials stating that he was recusing himself from the investigation into Purvis's alleged affair with Hernandez because Purvis complained that the investigation was "all because of her sexual orientation and added that she has obtained legal representation." (Doc. 43-4, at 477). A reasonable jury may infer that this informal complaint constituted a protected activity because it was made to MacGregor, a human resources manager, and invoked a specific basis for discrimination, sexual orientation. *See Bonson v. Hanover Foods Corp.*, 451 F. Supp. 3d 345, 357 (M.D. Pa. 2020) (finding informal complaints to management constitute protected activity if they invoke the specific type of discrimination at issue). Purvis presents her own testimony stating that after she complained about the Hernandez investigation being discriminatory, she was treated differently at the prison and was left out of certain events such as an event with drug dogs and group lunches. (Doc. 43-2, ¶¶ 65-66; Doc. 43-4, at 29-30). Purvis's testimony also includes that individuals she normally had lunch with stopped having lunch with her and stopped talking to her. (Doc. 43-2, ¶¶ 65-66; Doc. 43-4, at 30). A reasonable jury may conclude that Purvis was subjected to antagonism after a protected activity based on this evidence, but the evidence of a pattern of antagonism does not end there.

Purvis also submits evidence from which a reasonable jury may infer that after Cummings sent his letter accusing prison officials of discrimination, Lackawanna County officials attempted to circumvent Purvis's counsel before suspending Purvis and terminating her. Specifically, Purvis presents Cummings's February 15, 2022, letter which requests that Lackawanna County officials meet with Cummings to come to an "amicable resolution." (Doc. 43-4, at 497). Purvis also points to an email from Richard Jones, a Lackawanna County insurance and risk management employee, sharing the letter with Lackawanna County Prison

leadership, including Warden Betti, on March 2, 2022. (Doc. 43-2, ¶ 70; Doc. 43-4, at 501). Purvis further points to a March 3, 2022, email from JoAnne Granza ("Granza"), a Lackawanna County human resources manager, sent to Purvis and not Cummings which asks Purvis to meet with human resources regarding her accusations. (Doc. 43-2, ¶ 71; Doc. 43-4, at 507). The same email thread shows that Purvis forwarded Granza's email to Cummings, who then emailed Granza to offer to arrange a meeting. (Doc. 43-2, ¶ 70; Doc. 43-4, at 506). The record contains Granza's testimony, in which she stated that she never met with Cummings. (Doc. 43-2, ¶¶ 72-73; Doc. 43-4, at 522-24). Purvis further presents testimony from Granza stating that on March 7, 2025, Lackawanna County human resources allowed Warden Betti, whom human resources knew Purvis accused of discrimination, conduct a disciplinary interview with Purvis and conduct an investigation into Purvis. (Doc. 43-2, ¶¶ 72-73; Doc. 43-4, at 522-24). Both parties agree that Lackawanna County determined Purvis should be suspended on March 7, 2022, and Purvis would have been suspended that day had she not requested FMLA leave. (Doc. 39, ¶ 48; Doc. 43-1, ¶ 48).

Examining the record, a reasonable jury may conclude that the 20-day gap between Cummings sending a letter and Purvis being suspended is unduly suggestive of discrimination. *See Par. v. UPMC Univ. Health Ctr. of Pittsburgh*, 373 F. Supp. 3d 608, 636 (W.D. Pa. 2019), *cause dismissed sub nom. Par. v. Univ. Health Ctr. of Pi*, No. 19-2049, 2019 WL 5884996 (3d Cir. July 24, 2019) (finding a temporal gap of 16 days is unduly suggestive); *see Shealey v. Pittsburgh Mercy Health Sys., Inc.*, No. 2:23-CV-01511-CCW, 2025 WL 327310, at *9 (W.D. Pa. Jan. 29, 2025) (finding 19 days "within the general range of timing that may be considered unduly suggestive"). However, even absent unduly suggestive timing, a reasonable jury may infer that Lackawanna County officials engaged in a pattern of antagonism following Purvis's

14

protected conduct based on evidence from which the jury may conclude that after Purvis complained about discrimination, prison officials excluded her from events, refused to have lunch with her, refused to speak with her, attempted to circumvent her counsel, allowed an individual she accused of discrimination to investigate her, suspended her, and then terminated her. (Doc. 39, ¶ 48; Doc. 43-1, ¶ 48; Doc. 43-2, ¶ 65-66, 70-71; 72-73; Doc. 43-4, at 29-30, 477, 497, 501, 506-07; 522-24). There is a genuine dispute of material fact regarding Purvis's *prima facie* case of retaliation because a reasonable jury may infer that Purvis's complaints about discrimination caused her suspension and eventual termination. *See Carvalho-Grevious*, 851 F.3d at 262; *see also Shealey*, 2025 WL 327310, at *9; *see also Leese*, 2019 WL 3246746, at *9. The burden thus shifts to Lackawanna County to provide a nondiscriminatory reason for terminating Purvis, and then to Purvis to present evidence from which a reasonable jury may infer that Lackawanna County's reason is pretextual.

B.  THERE ARE MATERIAL ISSUES OF FACT THAT PRECLUDE SUMMARY JUDGMENT BASED UPON LACKAWANNA COUNTY'S PROPOSED NONDISCRIMINATORY REASON FOR TERMINATION.

Lackawanna County avers that it is entitled to summary judgment on Purvis's retaliation claims because the record exclusively shows Purvis was placed on leave and terminated due to receiving contraband intended to be delivered to an inmate, acting insubordinate during an investigatory interview regarding the package, and dishonestly denying knowledge of the package. (Doc. 40, at 6-8). Lackawanna County further argues that Purvis cannot establish that its reasons for terminating Purvis were pretextual because the decision to terminate Purvis was made by the Lackawanna County Prison Board, a neutral third party, rather than an individual with potential retaliatory animus. (Doc. 44, at 6-7). Purvis counters that a reasonable jury may conclude that Lackawanna County's reasons for

terminating Purvis were pretextual and she was terminated due to retaliatory animus. (Doc. 43, at 14-17). Purvis further posits that although the Lackawanna County Prison Board made the final decision to terminate Purvis, a reasonable jury may infer that this decision was based on Warden Betti's recommendation to terminate Purvis and Warden Betti was motivated by retaliatory animus against Purvis. (Doc. 52, at 5-9).

If a plaintiff establishes a *prima facie* case of retaliation, courts apply the *McDonnell Douglas* standard where "'the burden shifts to the employer to advance a legitimate, non-retaliatory reason' for its conduct and, if it does so, 'the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.'" *Moore*, 461 F.3d at 342 (quoting *Krouse*, 126 F.3d at 500). "To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken." *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994); *see also Fennell v. Comcast Cable Commc'ns Mgmt.*, LLC, 628 F. Supp. 3d 554, 580 (E.D. Pa. 2022). A plaintiff must "provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for discrimination [or retaliation]." *Burton*, 707 F.3d at 426 (3d Cir. 2013). To make a showing of pretext, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Burton*, 707 F.3d at 427 (quoting *Fuentes*, 32 F.3d at 764); *see also Leese*, 2019 WL 3246746, at *11; *see also Shealey*, 2025 WL 327310, at *10. A plaintiff may establish pretext by presenting evidence from which a reasonable jury may infer that the employer fabricated accusations of wrongdoing and there is an issue of material

16

fact regarding whether the plaintiff would have been terminated but-for their protected activity. *See Branch v. Temple Univ.*, 554 F. Supp. 3d 642, 659 (E.D. Pa. 2021)*; see also Shealey*, 2025 WL 327310, at *10.

In addition to making the above required showing of pretext, if a defendant provides evidence that the decision to terminate the plaintiff was made by a neutral party rather than an individual with potential retaliatory animus, the plaintiff must present evidence from which a reasonable jury may infer that an individual with retaliatory animus recommended termination which "bore a direct and substantial relation to [plaintiff]'s termination and that the [biased party's] recommendation was not independent and was foreseeable." *McKenna v. City of Philadelphia*, 649 F.3d 171, 179 (3d Cir. 2011); *see also Mason v. Se. Pennsylvania Transportation Auth.*, 134 F. Supp. 3d 868, 877 (E.D. Pa. 2015)

Lackawanna County asserts that it terminated Purvis because Wong, the wife of Inmate Wong, sent Purvis alleged contraband, Wong tasked Purvis with delivering that contraband to Inmate Wong, Purvis was insubordinate when interviewed about this incident, and Purvis dishonestly claimed during an interview that she did not know about the package. (Doc. 40, at 6). The Court finds that Lackawanna County has presented a nondiscriminatory reason for terminating Purvis and the burden shifts back to Purvis to present evidence from which a reasonable jury may infer that this reason was pretextual. *See Bisbing v. Lehighton Ambulance Ass'n, Inc.*, 142 F. App'x 71, 74 (3d Cir. 2005) (finding insubordination to be a legitimate, nondiscriminatory reason for termination); *see also Hatch v. Franklin Cnty. Jail*, No. 1:14-CV-2318, 2017 WL 6397830, at *9 (M.D. Pa. Sept. 29, 2017), *aff'd sub nom. Hatch v. Franklin Cnty.*, 755 F. App'x 194 (3d Cir. 2018) (finding a violation of prison security policy to be a nondiscriminatory reason for termination).

17

A genuine dispute of material fact precludes summary judgment because Purvis has presented evidence from which a reasonable jury may infer that Lackawanna County's stated reasons for suspending and terminating Purvis lack credibility and retaliatory animus was the real reason for her termination. *See Branch*, 554 F. Supp. 3d at 659; *see also Shealey*, 2025 WL 327310, at *10. First, Purvis presents evidence from which a reasonable jury may infer that Inmate Wong's wedding ring and crucifix cannot be considered contraband. Purvis presents the Lackawanna County Prison Employee Manual which states "[c]ontraband includes intoxicants, alcohol, pocket knives, tobacco (within secure perimeter), drugs, weapons, and any and all other objects which may jeopardize the security, safety or stability of the Prison, or which are specifically prohibited." (Doc. 43-4, at 598). Purvis further presents testimony from former Lackawanna County Prison Deputy Warden William Shanley ("Shanley") stating that inmates are permitted to have crucifixes and wedding rings so long as they fit within certain size requirements and don't have sharp edges. (Doc. 43, at 15-16; Doc. 43-2, ¶ 89; Doc. 43-4, at 423). Purvis also presents testimony from Shanley stating that items such as wedding rings and crucifixes were commonly brought into the prison through reception. (Doc. 43, at 15-16; Doc. 43-2, ¶¶ 89-90; Doc. 43-4, at 422-23). From this, a reasonable jury may conclude that Lackawanna County's accusations that Purvis received contraband lack credibility.

Further, a reasonable jury may infer that Purvis acted properly when she learned that Wong mailed her the wedding ring and crucifix. Purvis presents an email from Jason Cortese ("Cortese"), a corrections counselor, to Purvis informing Purvis that Inmate Wong was receiving a package and in response, Purvis stated "[s]ounds good, I'll forward to the Captain." (Doc. 43, at 15; Doc. 43-2, ¶ 84; Doc. 43-4, at 592). Purvis provides her own testimony stating

that "the Captain" was the prison's captain of security. (Doc. 43, at 15; Doc. 43-4, at 44). Lackawanna County does not present any evidence that Purvis was engaged in an agreement to smuggle contraband into the prison, and based on this email, a reasonable jury may infer that Purvis acted properly by notifying prison security officials about the package.

Purvis further presents evidence from which a reasonable jury may infer that Purvis was not insubordinate during her interview about the package, but rather was hesitant to answer questions without her lawyer present because she believed the investigation against her was in retaliation for her complaints about discrimination. As discussed *supra* Section III.A, Purvis presents evidence from which a reasonable jury may infer that Cummings attempted to meet with Lackawanna County human resources regarding Purvis's accusations of discrimination against prison officials, but this meeting never happened. (Doc. 43-2, ¶ 70-73; Doc. 43-4, at 506, 522-24). Further, Purvis presents evidence from which a reasonable jury may infer that Lackawanna County human resources allowed Warden Betti, whom human resources knew Purvis accused of discrimination, to conduct a disciplinary interview with Purvis. (Doc. 43-2, ¶¶ 70, 72-73; Doc. 43-4, at 501, 506, 522-24). Purvis presents handwritten notes from Amanda Chase ("Chase"), who was present during Warden Betti's disciplinary interview with Purvis, from the March 7, 2022, disciplinary interview which state Purvis "[r]efuses to answer any questions. Wants an [attorney] present." (Doc. 43-2, ¶ 74; Doc. 43-4, at 561). Purvis presents her own testimony stating that she told Warden Betti she was willing to comply with the investigation, but she wanted an attorney present because she had accused Warden Betti and others of discrimination and believed the allegations against her were false and targeted. (Doc. 43-4, at 45-46). From this a reasonable jury may conclude that Purvis was not insubordinate but rather trying to protect herself from retaliation.

19

Finally, Purvis presents evidence from which a reasonable jury may infer that Purvis did not dishonestly deny all knowledge of the package. Purvis presents an email thread between Chase and Warden Betti in which Chase states "Purvis did make mention of the jewelry contained [during her investigatory interview]. Wedding [r]ing and chain. She stated she knows nothing of a package addressed to her." (Doc. 43-4, at 563). Purvis further presents the initial email from Cortese informing Purvis about the package which does not state that the package would be addressed to Purvis, but rather informs Purvis that "Wong in Alpha wanted me to let you know that the package containing his crucifix and silicone wedding ring should be arriving tomorrow, per the tracking information his family gave him." (Doc. 43-4, at 592). From this, a reasonable jury may infer that Purvis was not dishonest when discussing the package, but rather was forthcoming about knowing its contents and earnest in stating that she did not know the package was addressed to her personally.

Based on the evidence, a genuine dispute of material fact exists regarding Lackawanna County's alleged non-discriminatory reasons for terminating Purvis because a reasonable jury may conclude that Lackawanna County's stated reasons for terminating Purvis lack credibility and are thus pretextual. *See Branch*, 554 F. Supp. 3d at 659; *see also Shealey*, 2025 WL 327310, at *10. Lackawanna County argues that the Court should overlook this evidence because the decision to terminate Purvis was not made by Warden Betti or anyone else Purvis accused of discrimination, but rather, the Lackawanna County Prison Board, a neutral third party. (Doc. 44, at 6-7). However, Purvis presents testimony from Granza, a human resources manager, stating that human resources allowed Warden Betti to conduct the investigation into Purvis despite knowing Purvis had accused him of discrimination. (Doc. 43-2, ¶¶ 72-73; Doc. 43-4, at 5224). Purvis further presents testimony from Warden Betti stating that he was

20

the one who made the recommendation to the Lackawanna County Prison Board to terminate Purvis. (Doc. 43-4, at 317). From this, a genuine dispute of material fact exists regarding whether Purvis was terminated for non-discriminatory reasons because a reasonable jury may infer that the Lackawanna County Prison Board relied on Warden Betti's investigation and recommendation to terminate Purvis when making its decision and could have foreseen that retaliatory animus affected Warden Betti's findings and recommendation. *See McKenna*, 649 F.3d at 179; *see also Mason*, 134 F. Supp. 3d at 877. As such, Lackawanna County's motion for summary judgment on Purvis's retaliation claims in Counts I and III is **DENIED**. (Doc. 38)

C. THERE ARE MATERIAL ISSUES OF FACT THAT PRECLUDE SUMMARY JUDGMENT ON PURVIS'S HOSTILE WORK ENVIRONMENT CLAIM.

Counts II and III allege that Lackawanna County violated Title VII and the PHRA by subjecting Purvis to a hostile work environment.[3] (Doc. 27, ¶¶ 47-58). Lackawanna County avers that Purvis has failed to establish a *prima facie* case for a hostile work environment because there is no evidence from which a reasonable jury may infer that Purvis was subjected to "severe or pervasive" gender and sexual orientation-based discrimination. (Doc. 40, at 8-14). According to Lackawanna County, the alleged instances of Purvis being subjected to inappropriate comments and investigations are too few and far between to constitute severe or pervasive discrimination. (Doc. 40, at 8-14). Purvis avers that she has shown a genuine dispute of material fact regarding whether she was subjected to severe or pervasive gender and

---

[3] Counts II and III also assert general discrimination claims. (Doc. 27, ¶¶ 50, 57). As noted by Purvis, Lackawanna County only addresses Purvis's hostile work environment claims in Counts II and III. (Doc. 43, at 17). Accordingly, the Court will only address Purvis's hostile work environment claims in Counts II and III.

sexual orientation discrimination because she has presented evidence from which a reasonable jury may infer that she was regularly subjected highly offensive and sexual comments and was subjected to fraudulent investigations. (Doc. 43, at 20-23).

Title VII and the PHRA both prohibit employers from creating a "hostile work environment amounting to employment discrimination." *Faragher v. City of Boca Raton*, 524 U.S. 775, 780 (1998); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986); *see also Renna v. PPL Elec. Utilities, Inc.*, 2019 PA Super 100, 207 A.3d 355, 368 (2019) (stating "[o]ne form of discrimination is a hostile work environment, which is a cognizable claim under the PHRA"). Courts consider Title VII and PHRA hostile work environment claims under the same standard. *See Burgess v. Dollar Tree Stores, Inc.*, 642 F. App'x 152, 155 (3d Cir. 2016) (nonprecedential). To survive a motion for summary judgment on a hostile work environment claim, a plaintiff must present evidence from which a reasonable jury may conclude "(1) the employee suffered intentional discrimination because of their sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of *respondeat superior* liability." *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009) (citing *Weston v. Pennsylvania*, 251 F.3d 420, 426 (3d Cir. 2001)).

Lackawanna County avers that Purvis has failed to meet the second element, pervasive and regular discrimination. (Doc. 40, at 10-14). Under this requirement, "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher*, 524 U.S. at 788 (citations omitted). However, if a plaintiff presents evidence that they were regularly

subjected to comments that are highly offensive to the plaintiff based on their race, sex, and/or sexual orientation, or comments which are sexually explicit, a reasonable jury may infer that the plaintiff experienced pervasive and regular discrimination. *See Streater v. City of Camden Fire Dep't*, 567 F. Supp. 2d 667, 669 (D.N.J. 2008) (finding a plaintiff established pervasive and regular discrimination by presenting evidence that he was regularly subjected to racist comments); *see also Jacobsen v. Meron Med., LLC*, No. CV 20-6357, 2022 WL 1567793, at *10 (E.D. Pa. May 18, 2022) (finding a plaintiff established pervasive and regular discrimination by presenting evidence that the plaintiff was regularly subjected to sexist and sexually explicit comments); *see also Brooks v. Temple Univ. Health Sys., Inc.*, No. CV 21-1803, 2022 WL 1062981, at *12 (E.D. Pa. Apr. 8, 2022) (finding a plaintiff established pervasive and regular discrimination by presenting evidence that the plaintiff was regularly subjected to homophobic slurs and comments and sexually explicit comments).

Purvis has presented a genuine dispute of fact regarding whether she was subjected to pervasive and regular discrimination. Lackawanna County argues that Purvis only testified to eleven offensive and sexual comments during her deposition, some of which did not relate to gender and sexual orientation, and eleven comments are insufficient to create a hostile work environment claim. (Doc. 40, at 10). The Court is persuaded by Purvis's counterargument that there is a genuine dispute of material fact regarding how frequently Purvis was subjected to offensive and sexual comments. (Doc. 43, at 22). While Purvis testified to eleven specific offensive and sexual comments during her deposition, Purvis also testified that male prison officials made offensive and sexual comments "constant[ly]" and that some of her eleven specific examples were examples of recurring offensive and sexual comments such as a recurring comment where MacGregor would refer to a female corrections

23

counselor as a "whore" and recurring comments where MacGregor would note the attractiveness of Purvis's sister and wife. (Doc. 43-4, at 13-14, 35). Based on Purvis's testimony, a reasonable jury may infer that Purvis was regularly subjected to offensive and sexual comments and not just subjected to eleven instances of offensive and sexual comments. *See Streater*, 567 F. Supp. 2d at 674-75 (finding a plaintiff's testimony that he was regularly subjected to racist comments created a question of fact regarding the frequency and seriousness of his mistreatment); *see also Brooks*, Inc., 2022 WL 1062981, at *12 (finding a plaintiff's testimony that he was regularly subjected to homophobic slurs and comments and sexually explicit comments created a question of fact regarding the frequency and seriousness of his mistreatment).

While the Court finds that a reasonable jury may conclude that Purvis was regularly subjected to offensive and sexual comments, the inquiry does not end there because a reasonable jury must be able to conclude that the comments were sufficiently severe to create a hostile work environment. *See Faragher*, 524 U.S. at 788. The Court finds that there is a genuine dispute of material fact regarding whether Purvis was regularly subjected to sufficiently severe comments because Purvis has presented evidence from which a reasonable jury may infer that she was regularly subjected to homophobic, sexist, and sexually explicit comments. *See Streater*, 567 F. Supp. 2d at 669; *see also Jacobsen*, 2022 WL 1567793, at *10; *see also Brooks*, 2022 WL 1062981, at *12. Purvis presents her own testimony in which she lists examples of comments which were highly offensive to Purvis based on her gender and sexual orientation and examples of sexually explicit comments such as a comment by Warden Betti asking if Purvis was "the male or female" in her same-sex marriage, a comment by MacGregor stating that Purvis's sister-in-law's vagina smelled bad, reoccurring comments by

MacGregor calling a woman a whore, reoccurring comments by MacGregor about Purvis's sister being ugly, and reoccurring comments by MacGregor about Purvis's wife being "hot." (Doc. 43-4, 12-14). Purvis further presents evidence beyond her own testimony from which a reasonable jury may infer that Purvis was regularly subjected to comments similar to her examples. Purvis presents an email she sent MacGregor, who was the head of human resources, complaining about Warden Betti making her uncomfortable. (Doc. 43-4, at 355-56). Purvis also presents a text message thread between her and MacGregor in which MacGregor calls a woman a whore and states that Purvis's wife was attractive. (Doc. 43-4, at 394). Purvis has presented a genuine dispute of fact regarding whether she was subjected to a hostile work environment because a reasonable jury may conclude that Purvis was regularly subjected to comments which were offensive to Purvis based on her sexual orientation and gender and regularly subjected to sexually explicit comments. *See Streater*, 567 F. Supp. 2d at 669; *see also Jacobsen*, 2022 WL 1567793, at *10; *see also Brooks*, 2022 WL 1062981, at *12. Accordingly, summary judgment on Purvis's hostile work environment claims in Counts II and III is **DENIED**. (Doc. 38).

D.  SUMMARY JUDGMENT IS WARRANTED REGARDING PURVIS'S CLAIM FOR PUNITIVE DAMAGES.

The amended complaint requests punitive damages for all Purvis's claims. (Doc. 27, at 12). Lackawanna County avers that it is entitled to summary judgment on Purvis's claims for punitive damages because punitive damages are not available against a county under Title VII and the PHRA does not allow for punitive damages. (Doc. 40, at 15). Purvis concedes that punitive damages are not permitted in this case. (Doc. 43, at 7). Accordingly,

Lackawanna County's motion for summary judgment is **GRANTED** as to Purvis's claims for punitive damages. (Doc. 38).

IV.    CONCLUSION

For the foregoing reasons, Lackawanna County's motion for summary judgment is **GRANTED in part** and **DENIED in part**. (Doc. 38). Lackawanna County's motion is **GRANTED** as to Purvis's requests for punitive damages. (Doc. 38). Purvis's requests for punitive damages will be **DISMISSED**. (Doc. 27, at 12). Lackawanna County's motion is **DENIED** as to Counts I, II, and III. (Doc. 38).

An appropriate Order follows.

Dated: September 29, 2025                                  *s/ Karoline Mehalchick*
                                                          **KAROLINE MEHALCHICK**
                                                          **United States District Judge**